IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| OSAMA M. EL-ATARI, ) | |
| ) | |
| Debtor ) | |
| ) | |
| KEVIN R. MCCARTHY, ) | |
| ) | 1:11cv1090 (LMB/IDD) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| WELLS FARGO BANK, N.A., ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

Defendant Wells Fargo Bank, N.A ("Wells Fargo" or "defendant") has filed a Motion to Withdraw the Reference of Adversary Proceeding, in which it seeks to have a fraudulent conveyance proceeding withdrawn from the bankruptcy court to district court. For the reasons discussed below, defendant's motion will be denied.

I.  BACKGROUND

In May 2008, Wells Fargo loaned $8 million to Osama El-Atari ("El-Atari or "debtor"). See Def. Wells Fargo Bank's Mot. to Withdraw ("Def.'s Mot.") at 2. A few months later, Wells Fargo became concerned about El-Atari after learning he was

"making false statements to Wells Fargo," and, on that basis, it accelerated the payoff requirements and demanded immediate repayment. Def.'s Mot. at 2.[1] In October 2008, El-Atari satisfied the Wells Fargo debt with an $8 million check. Id.

El-Atari has since been convicted of operating "a massive fraudulent scheme," in which he obtained bank loans totaling over $50 million by using fabricated life insurance policies as securities for the loans. Trustee's Opp'n to Mot. to Withdraw ("Pl.'s Opp'n") at 3-4.[2] He has been brought into involuntary bankruptcy proceedings pursuant to chapter 7 of the Bankruptcy Code after three of his creditors named him in a chapter 7 petition. Id. Plaintiff Kevin R. McCarthy, who was appointed the interim trustee for the bankruptcy estate, has filed adversary proceedings in the bankruptcy court against Wells Fargo and over forty other entities to recover what he alleges to be fraudulent conveyances under 11 U.S.C. §§ 548(a)(1)(A) or (a)(1)(B). Id. at 4-5.

---

[1] Defendant adds that "[a]t the time of this demand, Wells Fargo was unaware that the Debtor had lied about the collateral for the Loan." Def.'s Mot. at 2. The trustee characterizes Wells Fargo's behavior somewhat differently: "Following its discovery of the Debtor's fraud, Wells Fargo declared the loan in default and pressured the Debtor to find a way to quickly repay the money due." Trustee's Opp'n to Mot. to Withdraw ("Pl.'s Opp'n") at 4.

[2] El-Atari pled guilty to bank fraud and other criminal charges and is serving a twelve-year prison sentence. Pl.'s Opp'n at 4.

## II. DISCUSSION

Defendant has moved this Court to exercise its discretionary powers under 28 U.S.C. § 157(d) to withdraw the trustee's fraudulent conveyance action on the grounds that, first, the bankruptcy court lacks constitutional authority under <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011), to hear and decide the adversary proceeding; second, withdrawing the reference serves the interest of judicial economy because the same facts are at issue in <u>Northern Trust Bank, FSB v. Wells Fargo Bank, N.A.</u>, No. 1:11cv521(CMH/JFA)(E.D. Va. May 13, 2011)[3]; and third, the bankruptcy court lacks the authority to conduct a jury trial should Wells Fargo choose to exercise its Seventh Amendment right. <u>See</u> Def.'s Mot. at 3. The trustee objects to each of defendant's stated grounds.

### A. <u>Statutory Framework</u>

District courts "have original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C.

---

[3] Northern Bank is the institution from which debtor secured a loan to repay the $8 million to Wells Fargo. It has sued Wells Fargo on six counts, including aiding and abetting fraud, constructive fraud, and conversion. Complaint at 8-13, <u>Northern Trust Bank, FSB v. Wells Fargo Bank, N.A.</u>, No. 1:11cv521 (CMH/JFA)(E.D. Va. May 13, 2011).

§§ 1334(a),(b). The district courts have discretion to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges for that district. 28 U.S.C. § 157(a). Reference by the district court may permit the bankruptcy judge both to hear and determine issues, ultimately "enter[ing] appropriate orders and judgments," or it may allow that judge only to propose findings of fact and conclusions of law, which the district court then reviews de novo. §§ 157(b)(1), (c)(1). The bankruptcy court's authority to enter a final order depends on whether the issue at hand is deemed a "core proceeding." § 157(b)(2).

Under § 157(b)(1), "bankruptcy courts may hear and enter final judgments in 'core proceedings' in a bankruptcy case" while § 157(c)(1) provides that in "non-core proceedings, the bankruptcy courts instead submit proposed findings of fact and conclusions of law to the district court, for that court's review and issuance of final judgment." Stern, 131 S. Ct. at 2601-02. Among the enumerated types of core proceedings are fraudulent conveyance actions. § 157(b)(2)(H).

### B. Effect of Stern v. Marshall

Wells Fargo's primary argument is that the adversary proceeding should be withdrawn following the Supreme Court's

decision in Stern v. Marshall. Stern addressed whether a counterclaim that § 157(b)(2)(C) defines as "core," but which was essentially a claim under state law, could be properly decided by a non-Article III judge. The Court held that because the state law claim raised in the counterclaim was "in no way derived from or dependent upon bankruptcy law" and "exists without regard to bankruptcy proceedings," the bankruptcy court, as a non-Article III court, did not have the constitutional authority to enter a final judgment on that claim. 131 S. Ct. at 2618. In light of § 157's unequivocal grant of authority to bankruptcy courts to decide such claims, the constitutional question could not be avoided to save the provision at issue, and the Court held that "Congress, in one isolated respect, exceeded [the] limitation [of Article III] in the Bankruptcy Act of 1984." Id. at 2620.

Although Stern addressed a different type of "core" adversary proceeding than the one at issue here, defendant argues that Stern "made clear that fraudulent conveyance claims like the one asserted in [this] Adversary Proceeding may not be heard and determined by a non-Article III bankruptcy court, even though 28 U.S.C. § 157(b)(2)(H) designates as core proceedings 'proceedings to determine, avoid, or recover fraudulent conveyances.'" Def.'s Mot. at 5. Defendant finds support for its

argument in <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33 (1989), which addressed the right to a jury trial on a fraudulent conveyance claim brought by the trustee against a third party who had filed no claim against the bankruptcy estate. <u>Id.</u> at 36. The Court explained that, although a core proceeding, a fraudulent conveyance action is akin to a common law contract suit rather than an intertwined component of federal regulation, and the right to a jury trial under the Seventh Amendment therefore attaches. <u>Id.</u> at 54-56, 64-65. The <u>Stern</u> Court confirmed the <u>Granfinanciera</u> view in its discussion of actions "at common law that simply attempt[] to augment the bankruptcy estate [which are] the very type of claim that we held in . . . <u>Granfinanciera</u> must be decided by an Article III court." <u>Stern</u>, 131 S. Ct. at 2616. <u>Stern</u>, together with <u>Granfinanciera</u>, clearly supports the conclusion that the authority to issue a final decision in a fraudulent conveyance action is reserved for Article III courts. <u>See</u> <u>Paloian v. Am. Express Co.(In re Canopy Fin., Inc.)</u>, No. 11 C 5360, 2011 WL 3911082, at *2 (N.D. Ill. Sept. 1, 2011)("[B]y likening the claim in question to the fraudulent conveyance claims in <u>Granfinanciera</u>, the <u>Stern</u> Court made clear that the Bankruptcy Court lacks constitutional authority to enter final judgment on the [fraudulent conveyance] claims presented here.").

Finding that <u>Stern</u> precludes bankruptcy judges from issuing final orders in fraudulent conveyance proceedings[4] does not, however, lead inexorably to the further conclusion that defendant's motion for withdrawal of the reference must be granted, because bankruptcy courts also have jurisdiction to "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." § 157(c)(1). Under this provision, after overseeing discovery and taking evidence, the bankruptcy judge submits proposed legal and factual findings to the district court, which then reviews the matter <u>de novo</u> and issues a final decision. <u>Id.</u> Regardless of whether the effect of

---

[4] Although this conclusion has been reached by all of the district courts that have addressed the issue to date, there is contrary authority among the bankruptcy courts. <u>See</u> <u>In re Safety Harbor Resort and Spa</u>, No. 8:10-bk-25886, 2011 WL 3849639, at *10-11 (Bankr. M.D. Fla. Aug. 30, 2011):

> [R]egardless of bankruptcy courts' jurisdiction over state-law counterclaims, nothing in [<u>Stern</u>] actually limits a bankruptcy court's authority to adjudicate the other "core proceedings" identified in § 157(b)(2). . . . [Y]ears from now, the Supreme Court may hold that § 157(b)(2)[(H)] dealing with fraudulent conveyances is unconstitutional, just as it did with § 157(b)(2)(C). But the job of bankruptcy courts is to apply the law as it is written and interpreted today. Bankruptcy courts should not invalidate a Congressional statute, such as § 157(b)(2)[(H)]—or otherwise limit its authority to finally resolve other core proceedings—simply because dicta in <u>Stern</u> suggests the Supreme Court may do the same down the road. The Supreme Court does not ordinarily decide important questions of law by cursory dicta. And it certainly did not do so in <u>Stern</u>.

7

Stern was to remove certain proceedings from the list of "core proceedings" under § 157(b)(2) or simply to strike the phrase "and determine" from § 157(b)(1),[5] it does not follow that bankruptcy courts have lost all power to hear a fraudulent conveyance proceeding. Even if a fraudulent conveyance action, such as the one brought against Wells Fargo, has lost its vaunted status as a core proceeding, it is clearly "related to a case under title 11." See, e.g., Celotex v. Edwards, 514 U.S. 300, 308 n.5 (1995). As such, the bankruptcy court retains the authority to "submit proposed findings of fact and conclusions of law" that the district court then considers before entering a final judgment. § 157(c)(1).

Defendant objects to this approach, arguing that to permit bankruptcy judges to hear, but not finally decide, a fraudulent conveyance action would essentially rewrite the Bankruptcy Act. See Def. Wells Fargo Bank's Reply Br. Supp. Mot. ("Def.'s Reply") at 5 ("Congress did not reassign fraudulent conveyance claims as 'non-core' functions under § 157(c), so no court can sua sponte amend § 157(c) in 2011 by adding fraudulent

---

[5] Under this interpretation, certain counterclaims and fraudulent conveyance actions would still be considered "core" and could be "heard" by a bankruptcy court but would not properly be the subject of a final adjudication by that non-Article III court.

conveyance claims to the delineated list of non-core functions.").

Neither the statutory framework of the Bankruptcy Act nor the language of Stern itself supports defendant's argument. Far from rewriting the statute, permitting bankruptcy judges to hear and issue recommendations as to fraudulent conveyance actions comports with the statute's language and Congressional intent. See, e.g., Celotex, 514 U.S. at 308 ("Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate . . . ." (internal quotations marks omitted)).[6] Although Congress gave bankruptcy courts the authority both to "hear and determine" fraudulent conveyance proceedings, the Supreme Court has essentially held that the second of those two responsibilities must be carried out by an Article III court. That decision in no respect diminishes the authority of the bankruptcy court to "hear" a

---

[6] Additionally, the interpretative principles animating the statutory construction doctrine of severability are instructive here. See, e.g., Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987)(plurality opinion) (citing Regan v. Time, Inc., 468 U.S. 641, 652 (1984)) ("[A] court should refrain from invalidating more of the statute than is necessary. . . . '[W]henever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court . . . to maintain the act in so far as it is valid.' ").

fraudulent conveyance action. Wells Fargo's overbroad interpretation of Stern is, therefore, rejected.

This conclusion that bankruptcy courts may still hear fraudulent conveyance actions is consistent with the Stern decision's repeated admonitions that the holding "is a 'narrow' one" that "does not change all that much." 131 S. Ct. at 2619-20 (describing its holding as a "limitation[] on the authority of bankruptcy courts to enter final judgments"). The error in Wells Fargo's analysis is rendered clearest by a passage in Stern that anticipates defendant's argument:

> [T]he current bankruptcy system also requires the district court to review de novo and enter final judgment on any matters that are "related to" the bankruptcy proceedings, § 157(c)(1), and permits the district court to withdraw from the bankruptcy court any referred case, proceeding, or part thereof, § 157(d). [Respondent] has not argued that the bankruptcy courts "are barred from 'hearing' all counterclaims" or proposing findings of fact and conclusions of law on those matters, but rather that it must be the district court that "finally decide[s]" them. . . . We do not think the removal of counterclaims . . . from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a "narrow" one.

Id. at 2620.

Following the Stern decision, the majority of district courts have also concluded that the bankruptcy courts retain the power to hear but not decide state law claims. See In re Canopy Fin., Inc., 2011 WL 3911082, at *2, 4 (Stern "explicitly limited

its holding to a decision that bankruptcy courts were without constitutional authority to enter final judgment on certain claims," so there was no reason to find it "voided any statutory language applicable to" fraudulent conveyance actions, which would "leav[e] them to occupy a virtual 'no man's land' on the statutory landscape."); Boyd v. King Par, LLC, No. 1:11-CV-1106, 2011 WL 5509873, at *2 (W.D.Mich. Nov. 10, 2011)("[E]ven if there is uncertainty regarding the bankruptcy court's ability to enter a final judgment . . . that does not deprive the bankruptcy court of the power to entertain all pre-trial proceedings, including summary judgment motions."); Field v. Lindell et al. (In re Mortgage Store, Inc.), No. 11-00439 (JMS/RLP), 2011 WL 5056990, at *5-7 (D. Haw. Oct. 05, 2011)(The "court has little difficulty in finding that Congress, if faced with the prospect that bankruptcy courts could not enter final judgments on certain 'core' proceedings, would have intended them to fall within 28 U.S.C. § 157(c)(1) granting bankruptcy courts authority to enter findings and recommendations.").

The few cases cited by Wells Fargo to support its view merely demonstrate that uncertainty exists following Stern but do not persuade this Court that the Supreme Court intended to deprive the bankruptcy courts of any role in dealing with fraudulent conveyance actions. See Def.'s Mot. at 6-8; Def.'s

11

Reply at 3-5. For example, the first district court to address the present issue post-<u>Stern</u>, and the only one to hold that bankruptcy courts lack any jurisdiction over fraudulent conveyance actions, decided that "[g]iven th[e] definitive finding by the Court in Stern" that "'Congress could not constitutionally assign resolution of the fraudulent conveyance action to a non-Article III court,'" a fraudulent conveyance action could not "be adjudicated by the Bankruptcy Court since it lacks constitutional authority to do so under the restrictions placed by Article III." <u>In re Sitka Enter.</u>, No. 10-1847CCC, 2011 U.S. Dist. LEXIS 90243, at *3-8 (D.P.R. Aug. 12, 2011). <u>In re Sitka</u> did not address whether a bankruptcy court may continue to hear, but not finally decide, a fraudulent conveyance claim. <u>Id.</u> at *8. A bankruptcy judge in <u>In re Blixseth</u> also found that a non-Article III court may not decide fraudulent conveyance claims. <u>See In re Blixseth</u>, No. 09-60452-7, 2011 WL 3274042, at *11-12 (Bankr. D. Mont. Aug. 1, 2011) (analyzing cases distinguishing between public and private rights with respect to adjudications of state law claims by non-Article III courts and concluding those cases barred the court from rendering a final decision). The <u>Blixseth</u> court also concluded that because it "may not constitutionally hear the fraudulent conveyance claim as a core proceeding, and this Court

12

does not have statutory authority to hear it as a non-core proceeding, it may in no case hear the claim." Id. at *12. For the reasons articulated above, this Court finds that the Blixseth conclusion fails to consider properly the text of the Bankruptcy Act as well as the limiting language of Stern.

Finally, defendant's citation to In re Teleservices Group, which exhaustively analyzed the line of cases culminating in Stern, supports the conclusion that after Stern, the bankruptcy court may hear but not decide fraudulent conveyance actions. See In re Teleservices Group, No. HG 05-00690, 2011 WL 3610050, at *19 (Bankr. W.D. Mich. Aug. 17, 2011)(in which the bankruptcy judge submitted his findings on the fraudulent conveyance claim in a report and recommendation to the district court for de novo review, as he would with a non-core matter).

### C. Discretionary Withdrawals of Reference

Wells Fargo's final argument focuses on the Court's traditional discretionary authority to withdraw a reference from the bankruptcy court. Pursuant to 28 U.S.C. § 157(d), a district court "may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court], on its own motion or on timely motion of any party, for cause shown." 28 U.S.C.

§ 157(d).[7] District courts in the Fourth Circuit consider six factors when analyzing whether cause exists for a discretionary withdrawal:

- (i) whether the proceeding is core or non-core,
- (ii) uniform administration of bankruptcy proceedings,
- (iii) expediting the bankruptcy process and promoting judicial economy,
- (iv) efficient use of debtors' and creditors' resources,
- (v) reduction of forum shopping, and
- (vi) preservation of the right to a jury trial.

See, e.g., In re QSM, LLC, 453 B.R. 807, 809-10, 2011 WL 2161792, at *1 (E.D. Va. 2011).[8] The movant has the burden to demonstrate cause for discretionary withdrawal. Id.

Addressing each of the factors in turn, the trustee argues that the core versus non-core element weighs in his favor, against a finding of cause to withdraw, because fraudulent conveyance actions are statutorily defined as core proceedings. Pl.'s Opp'n at 13 (citing § 157(b)(2)(H)). Defendant relies on its previous argument that, regardless of the statute, under Stern, fraudulent conveyance claims may not be heard and determined by a bankruptcy judge. Def.'s Mot. at 9-10. Although

---

[7] Section 157(d) also contains a provision for mandatory withdrawal, which is not at issue in this motion.

[8] The district court developed these factors in In re U.S. Airways Group, Inc., 296 B.R. 673 (E.D. Va. 2003), after surveying tests from the Second, Third, Fifth, Seventh, and Ninth Circuits. See id. at 681-82 & nn.18-21.

the status of a fraudulent conveyance claim as a core proceeding is unclear after Stern, as discussed in Section II.B, this Court presumes that such claims, like non-core proceedings, may still be heard, although not decided, by bankruptcy courts. Because such claims cannot be treated as core proceedings, this factor weighs in defendant's favor.

The trustee argues that the uniformity factor weighs against withdrawal. Because the dispute with Wells Fargo is but one of more than forty fraudulent conveyance proceedings being pursued by the trustee in the El-Atari bankruptcy, the uniform administration of the bankruptcy proceeding is likely to be impaired or disrupted should defendant prevail on this motion. Pl.'s Opp'n at 13. Defendant counters that these forty proceedings "merely seek[] to augment the bankruptcy estate and do[] not raise other issues of bankruptcy law." Def.'s Mot. at 10. Even if this fraudulent conveyance action does not have the qualities of a core bankruptcy proceeding, there is still significant value in having the bankruptcy court preside over preliminary legal and discovery issues in a proceeding that is related to this bankruptcy action. See In re QSM, 2011 WL 2161792, at *3 (citing In re Jaritz Indus., Ltd., 151 F.3d 93, 107 (3d Cir. 1998)) (holding that "the purpose of establishing a nationwide bankruptcy system is to alleviate the district courts

of excessive workloads and to provide a system where judges with experience and expertise in bankruptcy matters can handle bankruptcy claims"). As such, the uniformity factor weighs against finding cause for withdrawal and in the trustee's favor.

With respect to the efficiency considerations embodied in the third and fourth factors — promotion of judicial economy and conservation of the debtor's and creditors' resources — the defendant argues that Northern Bank's civil action against Wells Fargo is "essentially a duplicate of the facts and legal issues" in the proceeding at issue here. Def.'s Mot. at 10-11; Def.'s Reply at 7-8. Although the same $8 million may be at issue, a review of the complaint in the Northern Bank litigation raises legal issues different from those in the trustee's action.

Defendant also argues that, even if Stern does not foreclose the bankruptcy court from hearing the issue and proposing findings of fact and conclusions of law, the bankruptcy court's decision will inevitably be re-litigated before the district court, resulting in needless costs for the parties and duplicative work by the two courts. Def.'s Mot. at 10.[9] The trustee responds that withdrawal of the request would not preserve resources and would threaten the fair and equitable

---

[9] This argument cannot be dispositive because § 157(c)(1) contemplates the issuance of reports and recommendations and subsequent de novo review by district courts.

16

resolution of the bankruptcy process by permitting one of the forty targets in the trustee's fraudulent conveyance proceedings to break off, possibly resulting in the trustee having to pursue assets for the estate separately through forty district court lawsuits. Pl.'s Opp'n at 14. Such a dispersion of the trustee's resources would significantly undermine efficiency. The Court agrees with the trustee's position and finds that these factors weigh heavily in the trustee's favor.

The fifth factor, forum shopping, is inapplicable here. In its reply brief, Wells Fargo suggests, without really arguing, that the trustee is engaged in forum-shopping; however, there are no facts to support such an argument. See Def.'s Reply at 9.

Preservation of the right to a jury trial is the final factor. Although Wells Fargo correctly states that it has a right to a jury trial on the question of whether the conveyance was fraudulent, it has not made a jury demand and continues to "deliberat[e] whether to exercise its Seventh Amendment right." Def.'s Mot. at 11. Therefore, the need for a jury trial is speculative. See In re O'Brien, 414 B.R. 92, 103 (S.D. W.Va. 2009)("Declining to withdraw the reference at this time preserves the right to a jury trial because the reference may be withdrawn if and when a jury trial becomes necessary."). Even

were Wells Fargo to request a jury trial, immediate withdrawal would not be required.

> [T]he mere fact that the district court must conduct a jury trial in an adversary proceeding does not mean that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of the jury selection and trial.

In re Stansbury Poplar Place, Inc., 13 F.3d 122, 128 (4th Cir. 1993); see also In re QSM, 2011 WL 2161792, at * 2 (denying motion for withdrawal of reference despite timely jury demand because bankruptcy court could still oversee discovery and hear summary judgment motion); In re Kleinert's, Inc., No. 04 Civ. 5286(DLC), 2004 WL 1878787, at *2-3 (S.D.N.Y. Aug. 19, 2004) ("The right to a jury trial does not always require an immediate withdrawal of the reference."). Accordingly, this factor does not strengthen Wells Fargo's position.

Weighing the six factors, the Court finds insufficient cause to justify the exercise of its discretion to withdraw the reference to the bankruptcy court.

### III. CONCLUSION

Having determined that after Stern, the bankruptcy court retains jurisdiction to hear, but not decide, fraudulent conveyances actions and that the traditional factors for

analyzing a motion for withdrawal of reference weigh against withdrawal, defendant's Motion to Withdraw the Reference of Adversary Proceeding will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 18th day of November, 2011.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge